NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1427                                          Appeals Court

MARGARET J. REICHENBACH & another[1] vs.  TIMOTHY G. HAYDOCK
& another.[2]

No. 16-P-1427.

Bristol.     September 6, 2017. - December 21, 2017.

Present:  Wolohojian, Agnes, & Wendlandt, JJ.

"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government.  Practice, Civil, Motion to dismiss.
     Massachusetts Civil Rights Act.

Civil action commenced in the Superior Court Department on
October 1, 2015.

A special motion to dismiss was considered by Robert J.
Kane, J., and a motion for reconsideration was considered by
him.

Daniel C. Perry for the defendants.
Robert B. Feingold (Heidi A. Nadel also present) for the
plaintiffs.

WOLOHOJIAN, J.  In 2008, the plaintiffs bought an

oceanfront property with the plan to demolish the existing house

_____

[1] John Reichenbach.

[2] Barbara Moss.

and build a new residence.  Two of the neighbors (the defendants, Timothy Haydock and Barbara Moss) vigorously objected and are alleged to have for years employed a variety of means -- some petitioning activity within the meaning of the "anti-SLAPP" statute, G. L. c. 231, § 59H, some not -- designed to block the project.  This suit arises out of that campaign, which the plaintiffs allege deprived them of their constitutional right to enjoy their property in violation of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H and 11I (the MCRA).[3]

We are not here concerned with the merits of that claim.  Instead, we deal in this interlocutory appeal[4] only with the denial of the defendants' special motion to dismiss pursuant to the anti-SLAPP statute.  That motion was decided before Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141 (2017), which was not handed down until after this appeal was already pending.  Despite the timing, Blanchard applies,[5] and applying

---

[3] In addition to their MCRA claim, the Reichenbachs assert claims of trespass and tortious interference with contractual and advantageous relationships.  These claims are not at issue in this appeal.

[4] An interlocutory appeal from the denial of an anti-SLAPP special motion is available under the doctrine of present execution.  See Fabre v. Walton, 436 Mass. 517, 521-522 (2002).

[5] "Where a decision does not announce new common-law rules or rights but rather construes a statute, no analysis of retroactive or prospective effect is required because at issue

its approach to the first prong of the Duracraft framework, see Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998), we affirm.

Background.[6] All of the real estate involved in this case was once owned by Clara Frothingham in the Nonquitt area of South Dartmouth, located on the shores of Buzzards Bay. In 1979, the Frothingham land was subdivided into eight lots, which were conveyed to members of Frothingham's family. Defendant Timothy Haydock (whom we are given to understand is part of the Frothingham family) acquired one of those lots in 1991 (the Haydock lot); he also has a one-sixth interest in another family lot nearby (the Haydock family lot). Defendant Barbara Moss, Haydock's long-term companion, lives with him on the Haydock lot.

The waterfront lot at issue here (the Reichenbach lot) was purchased by the Reichenbachs in 2008 from the trustee of the

---

is the meaning of the statute since its enactment." McIntire, petitioner, 458 Mass. 257, 261 (2010), cert. denied, 563 U.S. 1012 (2011). For this reason, Blanchard applies to this case regardless of the fact that it was decided after the decision below. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 167 (2017) (remanding for consideration under the second prong of the Duracraft framework, see Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 168 [1998], as augmented by Blanchard); Dever v. Ward, 92 Mass. App. Ct. 175, 183-184 (2017) (same).

[6] Our recitation of the facts is taken from the allegations of the complaint.

Frothingham Family Holding Trust.[7]  The Reichenbach lot is adjacent to the family lot in which Haydock has an interest and is also near (but not adjacent to) the lot where Haydock and Moss live.[8]  When the Reichenbach lot was owned by a member of the Frothingham family, Haydock and Moss had permission to use its tennis court and its stairway to the beach, leading Haydock to "regard[ the property] as part of his 'family compound,' and part of his backyard."  These accommodations stopped when the Reichenbachs purchased the property.

Although the Reichenbachs' plan to demolish the existing house and build a new summer home implicated the State's Wetlands Protection Act and the town of Dartmouth wetlands protection by-law, and required one or more building permits, there is no indication in the record on appeal that the defendants ever asserted that the Reichenbachs were required to obtain either a special permit or a variance under the Dartmouth zoning by-laws.  Haydock and Moss opposed the project and, over several years, repeatedly exercised their right to petition to

---

[7] The complaint alleges that Haydock and Moss tried to prevent sale of the property to the Reichenbachs, and urged the trustee of the Frothingham Family Holding Trust to keep the lot "in the family."

[8] Directly to the south of the Reichenbach land is a lot belonging to Paul and Ulla Sullivan (the Sullivan lot), whom we are given to understand are also members of the Frothingham family.

various State and local officials in a continuing (and

continuous) effort to block the Reichenbachs' plans.  Their

extensive (and ultimately unsuccessful) petitioning efforts are

set out in the margin.[9]  The Reichenbachs claim that none of the

_____

[9] The bulk of Haydock and Moss's objections were raised with
the town's conservation commission and the Department of
Environmental Protection (DEP).  It appears that the only
objection directed to the town's board of appeals concerned
construction of a retaining wall.  The complaint alleges that
Haydock and/or Moss (a) objected to the project at several
conservation commission hearings; (b) opposed the conservation
commission's issuance of an amended order of conditions; (c)
appealed the issuance of a building permit for a retaining wall;
(d) sought an adjudicatory hearing on the DEP superseding
amended order of conditions; (e) requested that the DEP issue an
order that would have prevented construction of a new driveway,
after the defendants had revoked the Reichenbachs' license to
use the existing driveway giving access to their lot; (f)
submitted a petition to the conservation commission requesting
revocation of the original order of conditions; (g) requested
that the Dartmouth board of health hold a full public hearing on
the Reichenbachs' request for septic system approval; (h)
requested that the Reichenbachs be required to apply for a soil
removal permit; (i) complained about the repair of a security
fence along a property line in which neither Moss nor Haydock
has an interest; (j) complained about the project to a DEP
official and threatened to "call [Moss's] Congressman" to force
DEP to take action; (k) complained to the conservation
commission about tree removal; (l) engaged, in June, 2013, in a
series of complaints to the conservation commission, resulting
in the commission requiring the Reichenbachs to file a request
for determination of applicability related to work that the
Reichenbachs claim consisted merely of "field adjustments,"
which would normally be reported at the conclusion of
construction; (m) appealed to the DEP and sought a superseding
determination of applicability after the conservation commission
issued a negative determination of applicability concerning the
alleged "field adjustments"; (n) wrote to the DEP alleging
(incorrectly) that a catch basin installed in the Reichenbach
driveway was only half the required size; (o) requested an
adjudicatory hearing at the DEP after the DEP issued a
superseding negative determination of applicability as to the

defendants' petitioning activities was meritorious ab initio -- a point that Moss and Haydock vigorously dispute.  In any event, none achieved the desired aim of blocking the project.

At the same time, Haydock and Moss also allegedly waged their campaign on different -- nonpetitioning -- fronts, including obstruction, interference, and dissuasion.  These efforts were ongoing and serious, and we set them out in the margin only to streamline this recitation and not to diminish their significance.[10]  In the end, the defendants' campaign was

---

"field adjustments"; (p) filed an unsuccessful request for reconsideration with the DEP after the DEP issued its final decision affirming the superseding negative determination of applicability; (q) appealed the DEP's final decision on the determination of applicability to the Superior Court; and (r) interfered with the Reichenbachs' application to the Federal Emergency Management Agency for a letter of map revision.

[10] Specifically, the Reichenbachs claim (a) Haydock and Moss repeatedly removed wooden boundary stakes installed by the Reichenbachs' land surveyor, requiring the installation of concrete boundary markers; (b) Haydock and Moss installed metal stakes and rope in the middle of an area over which they and others enjoy an ocean access easement, forcing foot traffic onto the Reichenbachs' property; (c) Moss repeatedly stood along the Reichenbachs' southern property lines, interrogating and harassing workers and taking photographs for prolonged periods of time; (d) Haydock and/or Moss on numerous occasions physically blocked construction workers and vehicles (including a concrete mixing truck, a tree removal truck, a disposal truck, an excavating company vehicle, and a painter's vehicle) and in the process often harangued or berated the drivers and workers, falsely accusing them of wrongdoing; (e) Haydock and Moss repeatedly (and without basis) claimed that contractors' vehicles were blocking access to the Haydock family lot; (f) Moss interfered with workers trying to fix a security fence along the Reichenbachs' southern boundary and falsely accused them of trespassing; (g) in May, 2013, Haydock and Moss began to

unsuccessful.  The Reichenbachs' new home was completed, and they received a final certificate of occupancy in 2014.

This suit followed in 2015.  In response, the defendants filed a special motion to dismiss pursuant to the anti-SLAPP statute.  As relief, the motion sought either that the MCRA count be dismissed in its entirety or, in the alternative, that thirty-eight specified paragraphs be struck from the complaint.  After a staged approach to the motion (which we describe more fully in the margin),[11] the judge denied it, finding, under the

---

store garbage cans and recycling bins on the property line between the Haydock family lot and the Reichenbach lot, close to and in view of the Reichenbach home; (h) in October, 2013, Moss stopped utility workers from installing a transformer on the Reichenbach lot; (i) Haydock and Moss trespassed on the Reichenbachs' land; (j) Haydock and Moss induced the Nonquitt Association to require the Reichenbachs to stop work in the summer months (even though that kind of work was ordinarily allowed); (k) Haydock threatened to plant a row of trees to block the Reichenbachs' view; and (l) Moss threatened to ruin the Reichenbachs' reputation in Nonquitt and promised that Moss and Haydock's tactics would cost the Reichenbachs an enormous amount of money.

[11] First, the judge ordered the defendants to group the challenged paragraphs of the Reichenbachs' complaint by subject matter, and to show how each group of activities qualified as petitioning for purposes of the anti-SLAPP statute.  Thereafter, the judge issued his "Rulings and Order on Defendants' Threshold Burden," finding that all but four of the paragraphs identified by the special movants concerned petitioning activity.  The judge went on to decide that count I "is based on defendants' 'petitioning activities alone and has no substantial basis other than or in addition to [their] petitioning activities,'" and, thus, the defendants had satisfied their burden under the first stage of the Duracraft framework.  See 427 Mass. at 167-168.  In keeping with the second stage of the Duracraft framework, see id. at 168, the judge then required the Reichenbachs to submit

second stage of the Duracraft framework, see 427 Mass. at 168, that Haydock and Moss's activities were devoid of any reasonable basis in fact or arguable basis in law and were thus unprotected sham petitioning.[12]

Discussion. Claims that are "based on [a] party's exercise of its right of petition under the constitution of the United States or of the commonwealth" are subject to dismissal under the anti-SLAPP statute via a special motion to dismiss.[13] G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1. While the statute's purpose is to "dispose expeditiously of meritless lawsuits that may chill petitioning activity," its application has caused much difficulty because "[b]y protecting one party's exercise of its right to petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged

---

materials demonstrating that "the petitioning activity 'was devoid of any reasonable factual support or any arguable basis in law'" and that the defendants' acts caused actual injury to the Reichenbachs. G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1.

[12] The judge also found that the plaintiffs at this stage had sufficiently demonstrated actual injury in the form of expenditures of money and severe emotional distress.

[13] As we have noted, the defendants' special motion sought, in the alternative, to strike certain paragraphs of the complaint. However, the remedy identified in the anti-SLAPP statute is dismissal -- whether complete or partial -- not the striking of individual factual allegations of a complaint, which instead is governed by Mass.R.Civ.P. 12(f), 365 Mass. 754 (1974).

in sham petitioning." Duracraft, 427 Mass. at 166-167. To address this concern, the Supreme Judicial Court formulated a two-step framework in 1998, which has come to be called the Duracraft framework. However, recognizing continuing problems of overbreadth in the statute's application, the court recently revisited the Duracraft framework in Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141 (2017). Blanchard is a significant development in our anti-SLAPP jurisprudence for two reasons. First, it augments the second prong of the Duracraft framework so as to provide a new, alternate method by which the nonmoving party can show that "its suit was not 'brought primarily to chill' the special movant's legitimate exercise of its right to petition," Blanchard, 477 Mass. at 159. Second, it clarifies the application of Duracraft's stage one analysis. Although Blanchard represents a significant development, it supplemented, and did not overrule, Duracraft.

In this case, we are concerned only with the first prong of the Duracraft framework, as its application has been explicated by Blanchard. At the first stage, the moving party has the burden to demonstrate "that the claims against it are, in fact, 'based on' its petitioning activities alone and have no substantial basis other than or in addition to its petitioning activities." Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002), citing Duracraft, 427 Mass. at 167-168. At this stage

of the inquiry, "the motive behind the petitioning activity is irrelevant," and "[t]he focus solely is on the conduct complained of." Office One, supra, citing Fabre v. Walton, 436 Mass. 517, 523-524 (2002). Because the first stage of the Duracraft analysis is, like the analysis of an ordinary motion to dismiss under Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974), directed to examining the allegations of the complaint, our review is "fresh and independent," i.e., de novo.[14] Blanchard v. Steward Carney Hosp., Inc., 89 Mass. App. Ct. 97, 103 (2016), S.C., 477 Mass. 141 (2017).

Special movants survive the threshold phase of the Duracraft framework if they establish (1) the complained of conduct is petitioning activity; (2) the petitioning activity is their own petitioning activity; and (3) the nonmoving party's claims are solely based on the petitioning activity. Blanchard, 477 Mass. at 153 n.19 (and cases collected therein). Here, Haydock and Moss are alleged to have engaged in many examples of petitioning activity (see note 9, supra) in their effort to halt the Reichenbach building project. Thus, they have easily satisfied the first two elements. The third element is the rub. Given the nonpetitioning activity in which Haydock and Moss are also alleged to have engaged (see note 10, supra), the question

---

[14] By contrast, we apply an abuse of discretion standard to the second prong of the analysis. Blanchard, 477 Mass. at 160.

is whether they have demonstrated that the MCRA claim has "no substantial basis other than or in addition to" their petitioning activity.  Office One, 437 Mass. at 122.

Blanchard clarified the analysis to be employed in stage one of the Duracraft framework when the special movant can demonstrate that "a portion of the nonmoving party's claim is based on petitioning activity."  477 Mass. at 153.  "[W]hen ascertaining whether petitioning activity is the sole basis of a claim, the structure of the nonmoving party's complaint ordinarily cannot be dispositive of the matter" because, were the opposite rule to apply, plaintiffs could easily avoid the consequences of the anti-SLAPP statute by "combining into a single count claims that are based on both petitioning and non-petitioning activities."  Id. at 155.  Thus, the fact that both petitioning and nonpetitioning activities are together alleged as the basis of a single cause of action (in this case, violation of the MCRA) is not dispositive of the special motion to dismiss.  If the claim "readily could have been pleaded as separate counts," then we must examine the independently actionable acts as though separately pleaded.  Ibid.

To see this principle in practice, we compare Blanchard with 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162 (2017), which the Supreme Judicial Court decided the same day. In Blanchard, two separate types of statements (an internal

electronic mail message [e-mail] to employees and statements
made to the Boston Globe) were the basis for a single defamation
claim.  Concluding that each type of statement could have been
equally pleaded as a separate claim of defamation, the court
analyzed them separately for purposes of the first prong of
Duracraft.  The court then went on to find that the statements
quoted in the newspaper constituted petitioning activity but
that the internal e-mail did not -- which meant that the special
movants in that case had met their threshold burden as to only a
portion of the defamation claim.  See Blanchard, 477 Mass. at
153, 161.  By contrast, in 477 Harrison, the Supreme Judicial
Court affirmed the denial of a special motion to dismiss a
c. 93A, § 11, claim, where the underlying facts pleaded included
both petitioning and nonpetitioning activity.  The court
concluded that, because nonpetitioning activity "provide[d] a
substantial nonpetitioning basis" for the c. 93A claim, the
defendants had failed to show, under the first stage of the
Duracraft framework, that the claim was "solely based on their
petitioning activity."  477 Harrison, 477 Mass. at 171.  In
other words, with respect to the c. 93A claim, the
nonpetitioning activity could not be separated from the
petitioning activity.

Read together, these cases illustrate that where the
individual underlying acts can each independently support the

asserted cause of action, then they are to be analyzed separately for purposes of the first prong of the Duracraft test. This analysis should be undertaken with an eye toward the particular cause of action: where a course of conduct is the basis of the claim, such as is typical of c. 93A claims, as in 477 Harrison, then the acts should not be parsed one from the other; where the individual acts can stand alone to support the cause of action (as in the individual statements underlying the defamation claim in Blanchard), they should be examined one by one. The analysis depends on the nature of the cause of action alleged and the theory of the complaint.

The cause of action at issue here is violation of the MCRA on a theory that the defendants' behavior (considered in its totality) constituted threats, intimidation, or coercion. This is a typical presentation of an MCRA claim, particularly in the context of a land use case such as here. An MCRA claim is often based on multiple or repeated acts that if taken individually would be insufficient to make out the claim but if taken collectively are sufficient to constitute threats, intimidation, or coercion. See, e.g., Haufler v. Zotos, 446 Mass. 489, 506-508 (2006) (pattern of "persistent and antagonistic" conduct satisfied MCRA). See also Bell v. Mazza, 394 Mass. 176, 180, 183 (1985) (course of conduct consisting of threats, "intemperate epithets," and physical obstruction satisfied

MCRA); <u>Ayasli</u> v. <u>Armstrong</u>, 56 Mass. App. Ct. 740, 753 (2002)
("While no single point is determinative, the aggregate facts of
this case are sufficient to create a jury question whether the
defendants' conduct as a whole violated G. L. c. 12, § 11I");
<u>Wodinsky</u> v. <u>Kettenbach</u>, 86 Mass. App. Ct. 825, 835-836 (2015)
(series of activities, including threats and physical
inconveniences, aimed at forcing plaintiffs from condominium
satisfied MCRA).[15]

Here, the complaint alleges that a lengthy pattern of
abuses by the defendants collectively amounted to threats,
intimidation, or coercion under the MCRA.[16]  The claim is based
on the fact pattern as a whole, not on isolated incidents, any
one or more of which might be considered insufficient to support
a civil rights claim when separated from the rest.  Thus,
although the alleged behavior includes petitioning activities,
the Reichenbachs' claim is not based solely on petitioning
activities and asserts a substantial basis beyond petitioning.

---

[15] We note, however, that in some circumstances a single act
can violate the MCRA.  See, e.g., <u>Batchelder</u> v. <u>Allied Stores
Corp.</u>, 393 Mass. 819, 823 (1985) (uniformed security guard's
order that plaintiff stop distributing political handbills
sufficient to support MCRA claim).

[16] Whether any of the plaintiffs' allegations regarding
Haydock and Moss's petitioning activities can ultimately support
an award of damages under G. L. c. 12, §§ 11H and 11I, is a
separate question.

See Duracraft, 427 Mass. at 168 (denying motion to dismiss where a substantial basis existed beyond petitioning activity).

The conclusion we reach here is consistent with cases presenting similar facts. In Ayasli, we upheld the denial of a special motion to dismiss because "[a]lthough one could infer that the defendants' persistent petitioning activities played a role in the plaintiffs' decision to file the complaint, there was also an independent basis for the complaint -- that the defendants were intentionally interfering with the plaintiffs' right to use and enjoy their property." 56 Mass. App. Ct. at 748. The defendants had protested the plaintiffs' building project to members of the local conservation commission, the building inspector, the local zoning board of appeals, and, eventually, the Superior Court. Id. at 743-746. But there was also evidence that the defendants had employed a variety of nonpetitioning methods to harass, threaten, and dissuade the plaintiffs from continuing with their project.[17] This bundle of activity, strikingly similar to that alleged in this case

---

[17] Specifically, the defendants' dogs had frightened the plaintiffs' children; the defendants' family hit golf balls into the water on the plaintiffs' land; the defendants directed traffic to the plaintiffs' house to an impassable old right-of-way; and one of the defendants had stated, "This is not the end. We will do everything we can to stop this project," had referred to the plaintiffs' contractor as the plaintiffs' "dupe," told the contractor that the defendant had a video camera and would record the building project, and entered the plaintiffs' property to take photographs. Ayasli, 56 Mass. App. Ct. at 742-745, 748-749.

(compare notes 10 & 17, supra), collectively supported the MCRA claim in addition to the petitioning activity.  Id. at 748-749.  Similarly, in Garabedian v. Westland, 59 Mass. App. Ct. 427 (2003), some of the defendants' challenges to the plaintiff's project constituted petitioning activity, but "[o]ther aspects of [the defendants'] intervention . . . were private and lacked the characteristics of petition, namely the harassing of Garabedian's contractor and the somewhat intrusive surveillance of Garabedian's activity."  Id. at 432.  Because some of the activities targeted the plaintiff directly, and "involved no supplication to higher authority," the plaintiff's declaratory judgment action "was not based alone on the petitioning activities of the neighbors."  Id. at 433.

For these reasons, Haydock and Moss failed to meet their threshold burden under Duracraft, and their special motion to dismiss was properly denied.  Because we reach this conclusion based on the first stage of the Duracraft analysis, we need not consider the second stage.

Order denying special motion
to dismiss affirmed.[18]

---

[18] Each party's motion for costs on appeal is denied.